# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| DEBBIE C. FREDRIKSEN, | No. 4:16-cv-05039-MKD |
|---|---|
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | ECF Nos. 28, 29 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 28, 29. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion (ECF No. 28) and denies Defendant's motion (ECF No. 29).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on February 19, 2013, with an alleged onset date of January 1, 2004. Tr. 166-85. The applications were denied initially, Tr. 104-10, and on reconsideration, Tr. 112-20. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October 7, 2014. Tr. 35-54. On November 26, 2014, the ALJ denied Plaintiff's claim. Tr. 17-34.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2004, her alleged onset date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: learning disorder, dysthymic disorder, attention deficit hyperactivity disorder, moderate destroscoliosis of the thoracic spine, and mild spondylosis of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

the cervical spine. Tr. 23. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following additional limitations:

> (1) [t]he claimant must avoid concentrated exposure to vibrations and hazards such as working at heights or near moving machinery; (2) the claimant is limited to unskilled work; (3) the claimant is limited to only superficial contact with the public; and (4) the claimant is limited to jobs with a reasoning level of 1.

Tr. 24.

At step four, the ALJ found Plaintiff is capable of performing past relevant work as a commercial cleaner. Tr. 27. Alternatively, at step five, the ALJ found Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including hand packager and igniter/capper. Tr. 28.

On February 24, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making that decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1. Whether the ALJ properly developed the record at step three;

2. Whether the ALJ properly weighed the lay opinion evidence;

3. Whether the ALJ properly weighed Plaintiff's symptom claims; and

4. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 28 at 12-19.

**DISCUSSION**

**A.     Duty to Develop Record and Listing 12.05**

Plaintiff argues the ALJ erred by failing to develop the record regarding Plaintiff's IQ score, which in turn caused the ALJ to err in failing to consider whether Plaintiff meets the criteria of Medical Listing 12.05. ECF No. 28 at 12-16.

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525; 416.925. To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. §§ 404.1525(d); 416.925(d). The claimant bears the burden of establishing she meets a listing. *Burch v. Barnhart*,
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

400 F.3d 676, 683 (9th Cir. 2005). If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

In her pre-hearing briefing, Plaintiff explicitly raised the issue of Listing 12.05, Intellectual Disorder. Tr. 256-57. The ALJ did not address Listing 12.05 during the hearing or in his decision. Tr. 23-24, 38-43. Plaintiff contends the ALJ failed to develop the record by not considering the argument or ordering additional IQ testing. ECF No. 28 at 12-16.

A disability claimant bears the burden to prove that he is disabled. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) ("[t]he claimant carries the initial burden of proving a disability."). However, an ALJ has a duty to develop the record further that is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001)). Additionally, where an ALJ relies on a medical expert who indicates the record is insufficient to render a diagnosis, the ALJ must develop the record further." *Reed v. Berryhill*, No. 3:16-cv-5675, 2017 WL 684154, at *3 (W.D. Wash. Feb. 21, 2017) (*citing Tonapetyan*, 242 F.3d at 1150). The duty to develop the record exists even when the claimant is represented by counsel, and is heightened in cases involving mental impairments.

*DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991); *see also Hilliard v. Barnhart*, 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (ALJ's duty to develop record triggered when plaintiff "raised a suspicion" of cognitive impairment).

Here, the ALJ found that Plaintiff has the severe impairment of learning disorder. Tr. 23. Plaintiff raised the possibility of intellectual disorder by specific reference to Listing 12.05 in her opening brief to the ALJ. Tr. 256-57. *See Hilliard*, 442 F. Supp. 2d at 817. Plaintiff testified at the administrative hearing that she had undergone IQ testing in the past and the results were low.[1] Tr. 43. The record also indicates Plaintiff was on an IEP from second grade through graduation, Tr. 284, and does not drive because she does not understand the driver's exam. Tr. 40-41.

Furthermore, the ALJ credited the opinion of a medical provider who opined Plaintiff needed further cognitive testing to determine the extent of her cognitive abilities. "Where an ALJ relies on a medical expert who indicates the record is insufficient to render a diagnosis, the ALJ must develop the record further." *Reed*,

---

[1] The school district that conducted the testing no longer has the results available for review. Tr. 281-82. The record indicates Plaintiff obtained a copy of her school file in 2013, however, the record does not specify whether that file contained Plaintiff's prior IQ testing scores. Tr. 281.

2017 WL 684154, at *3; *Tonapetyan*, 242 F.3d at 1150-51 ("the ALJ was not free to ignore [the medical expert's] equivocations and his concern over the lack of a complete record"); *Gray v. Colvin*, No. CV 15-795-PLA, 2015 WL 7069289 at *5 (C.D. Cal. Nov. 12, 2015) (record ambiguous where Plaintiff's impairments included neurological component and medical expert recommended additional neurological evaluation); *Dschaak v. Astrue*, No. CV 10-1010-PK, 2011 WL 4498832 at *20 (D. Or. Aug. 15, 2011) (ALJ failed to develop record by assigning "great weight," without further inquiry, to two medical opinions that called for additional testing).

Here, the ALJ assigned great weight to Dr. Rubin's opinion and some weight to Dr. Marks' opinion. Tr. 26. Dr. Rubin's report notes Plaintiff "may in fact have some learning disabilities. These can only be ruled out with further testing." Tr. 392. Dr. Marks noted some of Plaintiff's symptoms were "likely more due to some fairly severe learning disabilities." Tr. 286. Dr. Marks also found Plaintiff likely "continues to have learning disabilities, inattentiveness and likely some cognitive deficits," but her prognosis is "[u]nclear as further testing is needed to determine her exact level of cognitive abilities and learning deficits." Tr. 287-88. The ALJ assigned weight to both of these medical providers' opinions, but both providers opined that additional testing was needed to render a full assessment of Plaintiff's cognitive abilities.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

On this particular record, the lack of IQ scores establishes the kind of ambiguity or inadequacy that triggers the ALJ's duty to inquire. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). The ALJ is instructed on remand to develop the record by obtaining IQ scores and to evaluate whether Plaintiff meets Listing 12.05.

**B.    Lay Opinion Evidence**

Plaintiff challenges the ALJ's failure to discuss the lay witness testimony of Plaintiff's mother, Joni Fredriksen. ECF No. 28 at 17. Defendant responds that this error, if any, should be disregarded as harmless. ECF No. 29 at 18-19.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Ms. Fredriksen submitted an eight-page function report assessing her daughter's capabilities. Tr. 220-27. Ms. Fredriksen discussed Plaintiff's pain levels, activities of daily living, and physical and mental capabilities. *Id.* The ALJ failed to give any reasons, germane or otherwise, for rejecting Ms. Fredriksen's opinion; indeed, the ALJ's opinion does not address Ms. Fredriksen's opinion at all. Tr. 20-29. This was error. *See Molina,* 674 F.3d at 1114 ("under our rule that

lay witness testimony '*cannot* be disregarded without comment,' the ALJ erred in failing to explain her reasons for disregarding the lay witness testimony, either individually or in the aggregate.") (citing *Nguyen*, 100 F.3d at 1467)).

Defendant urges this error is harmless because Ms. Fredriksen's testimony is duplicative of Plaintiff's testimony. ECF No. 29 at 18-19. Where lay testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, failure to discuss the lay witness testimony is not prejudicial *per se*. *Molina,* 674 F.3d at 1117. However, as discussed *supra*, the case is being remanded to further develop the record. On remand, the ALJ is instructed to evaluate Ms. Fredriksen's opinion.

**C.    Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

Here, the ALJ concluded that although Plaintiff "appeared to be a credible witness, the objective medical evidence and opinion evidence in the record does not support her allegations of disabling impairments." Tr. 27. This Court finds the ALJ did not provide specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were unsupported. Tr. 27.

*1. Objective Medical Evidence*

First, the ALJ found that the objective medical evidence did not support her allegations of disabling impairments. Tr. 27. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680. Here, the Court has ordered that the ALJ develop the record with IQ testing.

Whether the ALJ's existing adverse credibility determination can be reconciled with the medical evidence on remand is for the Commissioner to decide in the first instance.

**D.     Medical Opinion Evidence**

Finally, Plaintiff faults the ALJ for discounting the opinion of Dr. Evelyn Rodriguez.  ECF No. 28 at 16.  Dr. Rodriguez examined Plaintiff twice and assessed Plaintiff's limitations due to back pain.  Tr. 384-86; 394-96.  Dr. Rodriguez opined Plaintiff did not have the physical capacity for full-time work. Tr. 394.  Dr. Rodriguez also assessed Plaintiff's functional capacity as sedentary, severely limited, and light.  Tr. 384-86; Tr. 394-96; Tr. 403.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–831).

Dr. Rodriguez's assessment of Plaintiff's back pain and the consequential limits on Plaintiff's physical RFC was contradicted by Dr. Bernardez-Fu. Tr. 96-97. Therefore, the ALJ needed specific and legitimate reasons to reject Dr. Rodriguez's opinion. *Bayliss,* 427 F.3d at 1216.

The ALJ found Dr. Rodriguez provided no explanation for her opinion, including an explanation of why her opinion changed over time. Tr. 26. On October 17, 2013, Dr. Rodriguez evaluated Plaintiff and assessed her functioning

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

as being able to regularly perform sedentary work. Tr. 386. On October 30, 2013, Dr. Rodriguez again evaluated Plaintiff, and on this occasion assessed her functioning as "severely limited," meaning she is unable to lift at least two pounds or unable to stand or walk. Tr. 395. On September 25, 2014, Dr. Rodriguez completed a medical questionnaire that assessed Plaintiff's functioning as regularly able to perform light work. Tr. 403. Dr. Rodriguez did not explain the changes in her findings in any of these reports. Because Dr. Rodriguez's inconsistent opinions were not explained, the ALJ had a specific and legitimate reason to reject Dr. Rodriguez's opinion.

**E.     Remand**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*,

859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to develop the record as to Plaintiff's IQ score and consider whether she meets Listing 12.05. The ALJ must also properly determine Plaintiff's credibility regarding her symptom reporting and properly address the opinions of lay witnesses, which may require the ALJ to formulate a new RFC. The ALJ will also need to supplement the record with any outstanding medical evidence and potentially elicit testimony from a medical or vocational expert.

## CONCLUSION

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 28) is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's motion for summary judgment (ECF No. 29) is **DENIED.**

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE PLAINTIFF**, provide copies to counsel, and **CLOSE THE FILE.**

DATED September 26, 2017.

                               *s/Mary K. Dimke*
                               MARY K. DIMKE
                               UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20